UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                          :

MARTHA VENTILLA,                  :

                    :

           Plaintiff,     :

                    :            19-CV-1134 (JMF)

     -v-             :

                    :      MEMORANDUM OPINION

PACIFIC INDEMNITY CO.,      :         AND ORDER

                    :

                    :

          Defendant.    :

                    :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Martha Ventilla brings a supplemental insurance claim against Pacific Indemnity

Company ("Pacific Indemnity"), seeking to recover, pursuant to a homeowner's insurance policy

(the "Policy"), nearly $400,000 in damages that occurred when, on January 31, 2015, the bathtub

in her Manhattan apartment overflowed and flooded her apartment with one to two inches of

water.[1]  Pacific Indemnity now moves, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, for summary judgment.  *See* ECF No. 28 ("Motion"); ECF No. 29 ("Def.'s Mem."),

at 24.  Among other things, Pacific Indemnity avers that all of Ventilla's claims are time barred

by the Policy's two-year limitations clause.  Ventilla, in response, contends that principles of

equitable estoppel preclude Pacific Indemnity's contractual defense.  For the reasons that follow,

the Court agrees with Pacific Indemnity.  Accordingly, Pacific Indemnity's motion must be and

is granted, and Ventilla's complaint is dismissed.

---

[1]     Ventilla initially sought consequential damages, but she withdrew the request in her
response to Pacific Indemnity's Second Set of Interrogatories.  *See* ECF No. 30-7, ¶ 18.

The following relevant facts, taken from the Complaint, ECF No. 1 ("Compl."), and admissible materials submitted in connection with the pending motion, are either undisputed or construed in the light most favorable to Ventilla.  *See Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 420 (2d Cir. 2018).  In brief, on January 31, 2015, Ventilla was in her apartment bedroom when she noticed water creeping in from under her door.  ECF No. 30-3 ("Pl.'s Dep."), at 37-39.  She followed the rising stream to the bathroom, where she discovered that her bathtub was inexplicably overflowing.  *Id*. at 40-41.  In a desperate attempt to stem the flood and protect her most-cherished items, Ventilla (in addition to contacting building staff, who arrived with a wet vacuum cleaner) mopped up the water with clothing and linens. *See id.* at 44-45, 53; ECF No. 30-11 ("Stadler Dep."), at 38; ECF No. 28-1 ("Def.'s 56.1 Stmt."), ¶¶ 17.  But instead of laundering the clothing and linens for reuse or, at the very least, keeping the damaged possessions in storage in support of a later insurance claim, Ventilla bagged the soaked items and other ruined contents from her apartment and threw them away that same day. Def.'s 56.1 Stmt. ¶¶ 17, 32-33; Pl's Dep. 72-76.

Ventilla reported the incident to Pacific Indemnity on February 2, 2015, and on February 4 and 25, 2015, representatives from the insurance company conducted initial and follow-up surveys of her apartment.  Def.'s 56.1 Stmt. ¶¶ 10, 12, 15.  Ventilla did not, and indeed, could not, present the damaged items to the representatives for inspection during either visit.  *Id*. ¶¶ 13, 17.  At best, she presented a handwritten note during the February 25th meeting indicating that her claim for damaged clothing would total approximately $50,000.  *Id*. ¶¶ 16-17; Stadler Dep. 38.  She also informed the representative that she had certain art that might have been damaged as a result of the water leak but that she was uncertain and would have an art restorer evaluate the art and provide an opinion.  Def's 56.1 Stmt. ¶ 24.  More than a year passed, and other than

presenting some receipts and credit card statements for certain items, Ventilla never provided

more definitive details about her supplemental loss claim or provided the artwork for inspection

or appraisal, despite Pacific Indemnity's follow-up requests.  *See* Stadler Dep. 83-84; *see also*

ECF No. 38-2 (art appraisal from Ventilla's expert submitted June 2018, more than three years

after the loss).  Eventually, the parties entered into a Settlement Agreement and Release, ECF

No. 30-5 ("Release"); signed by Ventilla on December 5, 2016, pursuant to which Pacific

Indemnity paid Ventilla "$951,428.46 on account of construction repairs, mold remediation,

contents, fine arts and extra living expenses."  ECF No. 30-1 ("October 25th Letter"), at 2; *see*

*also* Def.'s 56.1 Stmt. ¶ 3.  In exchange, Ventilla released any "claims and potential claims for

Additions & Alterations and Additional Living Expenses" arising under the Policy and

pertaining to the January 31st incident.  Release 1-2; *see* Def.'s 56.1 Stmt. ¶¶ 3-4.

Nevertheless, nearly twenty-eight months after the January 31st flood, on May 23, 2017,

Ventilla, through her insurance agent, submitted a Supplemental Contents Claim and, for the first

time, advised Pacific Indemnity that she was seeking "$286,640.48 for damage to 'seven closets'

worth of items."  Def.'s 56.1 Stmt. ¶¶ 20-21.  Pacific Indemnity, pursuant to the Policy, asked

Ventilla to appear for an examination under oath and to submit a sworn proof of loss with respect

to the damaged personal property.  Ventilla provided the latter on May 29, 2018, and appeared

for the former on June 21, 2018, after twice rescheduling.  Ventilla's agent had also

communicated on April 5, 2016, without more detail, that Ventilla was concerned about

humidity damage to three oil paintings and two sculptures.  October 25th Letter 2.  Yet it was

only after this lawsuit commenced that, on July 9, 2019 — over four and a half years after the

date of loss — Ventilla in her First Set of Interrogatory Responses finally claimed $99,098.00

for damage to her fine arts collection (the "Fine Arts Claim").  Def.'s 56.1 Stmt. ¶¶ 23, 25-28.

Pacific Indemnity later advised Ventilla in a letter dated October 25, 2018, that the company disclaimed coverage for Ventilla's Supplemental Contents Claim and any potential Fine Arts Claim as time barred by the policy's two-year limitation clause.  October 25th Letter 3; Def.'s 56.1 Stmt. ¶ 30.  On February 6, 2019, Ventilla filed this action, claiming breach of contract and seeking declaratory judgment.  Compl. ¶¶ 56-60.

Under New York law, which applies to Ventilla's claims, "[a]n agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period in which to commence an action is enforceable."  *Classic Laundry & Linen Corp. v. Travelers Cas. Ins. Co. of Am.*, 739 F. App'x 41, 42 (2d Cir. 2018) (summary order) (quoting *Exec. Plaza, LLC v. Peerless Ins. Co.*, 5 N.E.3d 989, 991 (N.Y. 2014)).  Courts have held that "there is nothing inherently unreasonable about a two-year period of limitation," *Exec. Plaza*, 5 N.E.3d at 991; in fact, as Pacific Indemnity rightly notes, courts in New York have enforced limitation clauses that are even shorter, *see, e.g.*, *Wechsler v. HSBC Bank USA, N.A.*, 674 F. App'x 73, 74-75 (2d Cir. 2017) (summary order); *Exec. Plaza*, 5 N.E.3d at 991-92 (collecting cases).  What matters here, however, is not so much the duration of the limitations period, "but [the] accrual date" and whether, "in view of the circumstances of [the] particular case," the relevant conditions precedent can be satisfied within the prescribed time period.  *Exec. Plaza*, 5 N.E.3d at 992 (internal quotation marks and citation omitted); *see also Wechsler*, 74 F. App'x at 75.  Under the Policy here, Ventilla's ability to bring any legal action against Pacific Indemnity was conditioned on two events: first, that she "complied with all conditions of [the] policy," and second, that she bring the action "within two years after a loss occurs."  Policy 92.  To satisfy all of the conditions for a property damage claim, Ventilla was required to notify Pacific Indemnity or her agent of the loss as soon as possible; "take all reasonable means that are necessary to protect

4

property from further loss or damage"; prepare an inventory of damaged personal property, attaching bills, receipts, and other support of the like; and, upon Pacific Indemnity's request, show Pacific Indemnity the damaged property, participate in an examination under oath, and submit, within sixty days of the request, a signed, sworn proof of loss.  *Id*. at 91; *see also* Def.'s 56.1 Stmt. ¶ 7.

All of these events could, with reasonable diligence, have been completed within two years of the January 31, 2015 incident.  Ventilla's failure to launder or keep the damaged items — and the snowball effect that that misguided decision may have had with respect to her ability to submit the Supplemental Contents and Fine Arts Claims before January 31, 2017 — does not excuse that fact.  No reasonable jury would conclude otherwise.  *See, e.g.*, *Johnson v Hartford Fire Ins. Co*., 157 N.Y.S. 893, 895 (N.Y. App. Term 1916) (holding that an insured must keep and present for inspection fire-damaged property if required by insurance coverage);.  Accordingly, the two-year limitation clause is enforceable, and this action, filed four years after the loss occurred, is time barred.

Ventilla does not really quarrel with that conclusion, but rather argues that her claims are saved by the doctrines of equitable estoppel and continuous treatment.  *See* Pl.'s Opp'n 6-8.  But Ventilla cannot avail herself of either.  "[T]he doctrine of equitable estoppel is available where the plaintiff knew of the existence of h[er] cause of action but the defendant's conduct caused h[er] to delay bringing h[er] lawsuit."  *Thomas v. N.Y.C. Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *3 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks omitted).  "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to h[er] detriment."  *Ellul v. Congregation of*

*Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (internal quotation marks omitted).

Significantly, the defendant's "fraud, misrepresentations, or deception must be affirmative and

specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for

potential claims is not enough." *Universitas Educ., LLC v. T.D. Bank, N.A.*, No. 15-CV-5643

(SAS), 2016 WL 80210, at *2 (S.D.N.Y. Jan. 5, 2016).

   Given the undisputed facts here, Ventilla cannot meet these requirements.  Ventilla's

main contention is that she is an older woman who lived alone and was not an expert on water

loss.  As such, "[s]he relied on the professionals at her insurance company to tell her what to do."

Pl.'s Opp'n 12.  "When she spoke to representatives of Defendant," she claims, "no one told her

that she had to keep all of the items she was claiming at any cost," and she "did not have the

luxury of putting the wet items in a garage like a regular homeowner." *Id.* at 10.  That may be

so, but an insurer is under no obligation to remind an insured of the policy's terms, especially

when the insured is in possession of the policy.  Indeed, "upon acceptance of an insurance policy

and in the absence of fraud or misrepresentation, an insured is charged with knowledge of all of

the terms and conditions of the policy." *W. World Ins. Co. v. Stack Oil, Inc*., 922 F.2d 118, 122

(2d Cir. 1990); *Metzger v. Aetna Ins. Co.*, 125 N.E. 814, 816 (N.Y. 1920).  Ventilla does not

claim that she entered the Policy under fraudulent conditions.  Nor does she allege that Pacific

Indemnity, which diligently investigated her supplemental claims even after the parties had

entered into the Release, induced her into not bringing suit.  Moreover, as Ventilla herself

acknowledges, she "[e]ventually" did "use another apartment that she owns in the same building

as a storage unit."  Pl.'s Opp'n 10.  Ventilla does not provide any reason as to why she did not do

so in the first instance, or hire movers to help her, for at least the four- to twenty-five-day period

between when the loss occurred and when Pacific Indemnity's representatives conducted their surveys, rather than throwing away upwards of $200,000 in belongings.

Ventilla's invocation of the continuous treatment doctrine fails as well. "This doctrine provides that when a professional's wrongful conduct was part of a continuous course of treatment, accrual of a malpractice action is suspended until the professional relationship is terminated." *T & N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57, 60 (2d Cir. 1994). But the doctrine typically applies only to professionals such as doctors, lawyers, and accountants; "[u]nder New York law," the doctrine "does not apply to insurance brokers and agents." *One Beacon Ins. v. Terra Firma Const. Mgmt. & Gen. Contracting, LLC*, No. 02-CV-7492 (SAS), 2004 WL 369273, at *3 n.3 (S.D.N.Y. Feb. 26, 2004). Even if the doctrine were applicable, however, the Court "would decline to apply it in this case," *T & N PLC*, 29 F.3d at 60, given that Pacific Indemnity, as stated above, had no obligation to help Ventilla comply with the Policy's conditions and did nothing to impede her ability to do so, *see, e.g., id.* at 61.

In sum, the Court is compelled to conclude that Pacific Indemnity is entitled to summary judgment on the ground that Ventilla's claims are untimely. Accordingly, the Court need not and does not address Pacific Indemnity's other arguments in favor of summary judgment, including its contention that Ventilla's claims are barred by the Release.

The Clerk of Court is directed to terminate ECF No. 28, and to close this case.

SO ORDERED.

Dated: July 9, 2020
      New York, New York

_____
JESSE M. FURMAN
United States District Judge